IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AGENCY SOLLUTIONS.COM, LLC  dba HEALTHCONNECT SYSTEMS,<br><br>Plaintiff,<br><br>v.<br><br>THE TRIZETTO GROUP, INC.,<br><br>Defendant. | 1: 11-CV-1014 AWI GSA<br><br>ORDER ON DEFENDANT'S MOTION FOR AWARD OF ATTORNEY'S FEES<br><br>Doc. # 84 |

This is an action in diversity by plaintiff Agency Solutions.Com., LLC dba Healthconnect Systems, ("Plaintiff" or "HCS") against defendant The TriZetto Group, Inc. ("Defendant" or "TriZetto") pursuant to California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426, et seq.  Plaintiff filed a motion for preliminary injunction two days after the original complaint was filed.  After a brief period of expedited discovery, the parties filed their arguments for and against issuance of preliminary injunction.  Plaintiff's motion for injunctive relief was denied and Plaintiff filed a notice of appeal.  During the pendency of the appeal, Plaintiff voluntarily dismissed this action.  Defendant thereafter filed the instant motion for award of attorney's fees and costs.  For the reasons that follow Defendant's motion will be denied.

## FACTUAL BACKGROUND

On September 13, 2011, the court issued a Memorandum Opinion and Order denying Plaintiff's motion for preliminary injunction. (Hereinafter, the "September 13 Order"). Doc. # 61. Plaintiff promptly filed an appeal of the court's September 13 Order to the Ninth Circuit Court of Appeals. Plaintiff alleges that on November 15, 2011, during the pendency of its appeal of the September 13 Order, a company called Ebix "entered into a deal to acquire HCS."[1] Plaintiff alleges that Ebix chose not to acquire HCS's claims against Defendant. Plaintiff alleges that "[a]lthough HCS continued to believe in the merits of its case and in the strength of its appeal, it no longer had an operating business and could no longer claim irreparable injury. Therefore, HCS filed a stipulated motion to dismiss the appeal and the action with prejudice." Doc. # 87 at 8:7-10.

Defendant filed the instant motion on January 18, 2012, "pursuant to Fed. R. Civ. Pro. 54(d), Eastern District Rule 293, and Cal. Civ. Code § 3426.4 and for an order of this Court: (a) finding that TriZetto is the prevailing party in this action; (b) finding that HCS brought this action in bad faith; and (c) awarding TriZetto its reasonable attorneys' fees in an amount totaling $129,092 or in such other amount as the Court determines is proper." Doc. # 84 at 5:5-9. Plaintiff filed its opposition on January 30, 2012, and Defendant filed its reply on February 17, 2012. The parties stipulated that decision on Defendant's motion for attorneys' fees without oral argument is appropriate.

## LEGAL STANDARD

Pursuant to California Civil Code § 3426.4:

> If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious

---

[1] It is not entirely clear from Plaintiff's opposition whether Ebix acquired HCS as a business in its entirety or whether it only acquired HCS's business interests and the company remained. Plaintiff's opposition suggests that HCS continues to exist as an entity but without any interest in the business enterprise that was alleged to have been harmed by Defendant's actions.

2

> misappropriation exists, the court may award reasonable attorney's fees and costs to the prevailing party.

Because there is no statutory definition of "bad faith" in the context of trade secret misappropriation, California courts have developed a two-pronged standard for the evaluation of such claims. The party seeking an award of attorney's fees under section 3426.4 must show (1) the objective speciousness of opposing party's claim, and (2) the subjective bad faith of the opposing party in bringing or maintaining the action, that is, for an improper purpose. Gemini Aluminium Corp. v. California Custom Shapes, Inc., 95 Cal.App.4th 1249, 1261 (2002). "Objective Speciousness exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim." FLIR Systems, Inc. v. Parrish, 174 Cal.App.4th 1270, 1276 (2009). Objective speciousness may be shown by, among other factors, demonstrating that there was no misappropriation or threatened misappropriation or that the opposing party could not have suffered any economic harm. Id.

> Subjective bad faith may be inferred by evidence that [a party bringing an action for trade secret infringement] intended to cause undecessary delay, filed the action to harass [the opposing party], or harbored improper motive. [. . . .] The timing of the action may rase an inference of bad faith. [. . . .] Similar inferences may be made where the plaintiff proceeds to trial after the actions's fatal shortcomings are revealed by opposing counsel.

Id. at 1278 (internal citations omitted).

## DISCUSSION

In the first part of the court's analysis of Plaintiff's motion for preliminary injunctive relief, the court observed: "It is this court's observation that the motion before it seeks to stretch the category of what is a trade secret." Doc. # 61 at 15: 23-24. In retrospect, the court's observation captured accurately the essence of Plaintiff's basic contention with regard to this case. While the court noted that case authority has established that trade secrets are informational elements that include, *inter alia*, formulae, patterns, compilations, devices, methods techniques or processes, Plaintiff's arguments in favor of injunctive relief urged the court to expand this list to include as trade secrets less discrete things such as insights, trade

3

know-how and experience.

As the court observed in its September 13 Order, the plaintiff seeking to establish a claim under California's Uniform Trade Secrets Act must (1) identify with some particularity the "thing" claimed to be a trade secret, and (2) must clearly state why that "thing" belongs in the legal category of trade secret. The court's decision to deny Plaintiff's motion for preliminary injunction rested on two broad findings. First, the court found that Plaintiff's narrative descriptions of "insights" and "proprietary knowledge" did not identify with sufficient particularity the "thing" that was being alleged a trade secret. Second, the court determined that, to the extent Plaintiff could be said to have identified specific knowledge it imparted to Defendant, it failed to show that the knowledge – which it described as "proprietary" or the result of "proprietary knowledge" or "experience" or "know how" – was something more than the sort of knowledge that was well known or evident within the trade.

Underlying Plaintiff's claims of trade secret infringement was a conceptual model of the cooperation between HCS and TriZetto that differed fundamentally between the two sides. HCS offered a conceptual model of the relationship between itself and TriZetto as a cooperative effort leading to the production of the entire "To" (or interface capability) function. Thus, although HCS admitted that a substantial amount of the "To" software was written by TriZetto programmers and resided on their computers, HCS urged a conceptualization of the "To" product as the result of a cooperative sharing of knowledge and expertise which resulted in the "incorporation" of HCS trade secrets (consisting largely of "know-how" and/or insight) in the ultimate product.

Trizetto offered a fundamentally different conceptual model. TriZetto urged the court to regard the software that resulted from the cooperative effort between the parties as a series of discrete programs or sub-programs, some of which were written by HCS and resided on their computers and some of which were written by TriZetto and resided on their computers. TriZetto contended, and the court agreed, that under the agreement between the parties,

software written by one party and resident on their computers indicated sole ownership of that program or sub-program. Thus, the court ultimately determined that HCS had not made a showing that the discrete computer programs or sub-programs that resided on TriZetto's computers contained one or more definable elements that could be called HCS's trade secrets.

At the core of this or any contention of speciousness is the plainly apparent lack of any possibility of success under the facts reasonably known or knowable to the party bringing the claim. Obviously, not every failure of proof evinces futility from the outset, nor does every unsuccessful effort to expand a legal category indicate a frivolous or specious claim. At least one of the categories of recognized trade secrets – processes – was under consideration in this action. A major component of Plaintiff's disputation with this court's decision, as presented to the appellate court, was their contention that a process which is incorporated into a program that is reflected in the way the program is experienced by the operator may qualify as a trade secret. While the court found that Plaintiff had failed to identify a particular process and show that the "process" was not one that was generally known in the trade, the question was a close one. The only consideration that definitively tipped the issue in Defendant's favor was the fact that Plaintiff's counsel was not able to point with specificity to *a particular process* and make a showing that the process was one known only to HCS.

While case authority does its best to set out factors that give the sense of a firmly objective basis for the determination of speciousness, the truth is that the determination is fundamentally subjective as that term is usually understood outside of the legal context. The court concludes that the case Plaintiff made for the threat of loss of its trade secrets, while insufficient for the purpose of obtaining preliminary injunction, was not specious because the court simply feels that the legal and factual bases of Plaintiffs claims were not so far from adequate as to cause a reasonable attorney to refuse to present his client's best case in a court

5

proceeding. To sustain a claim that an action for trade secret misappropriation is "specious" a court is essentially making the judgment that the entire action was plainly improper from its inception. Defendant has not convinced the court this is the case here.

As to "subjective bad faith," the court is even more unconvinced by Defendant's argument. Plaintiff has articulated a subjectively reasonable motivation for this action; they felt TriZetto had "done them wrong" by abrogating the Agreement and was imminently going to bestow the benefits of two years of HCS's work and insight on a competitor. While HCS was legally incorrect as to what it considered to be its trade secrets, and came up factually deficient in its effort to prove its case, the fact remains that there is no obvious reason to consider HCS's reaction unreasonable or an example of bad faith.

Defendant observes that Plaintiff only discontinued the action when it was required to so because it lost any economic interest in the "QuoteToCard" product through the sale to Epix. From the court's perspective, it is not important whether HCS would have otherwise maintained the action. The court cannot speculate what HCS would or would not have done in this court had its interests not been sold to Epix. While it is certainly true that the continuation of litigation in this court in the face of the September 13 Order would have added ammunition to Defendant's argument for bad faith, that did not happen. The court cannot find bad faith on the basis of speculation as to what Plaintiff might have done under different circumstances.

To the extent Defendant suggests that Plaintiff continued this action long enough to accomplish some improper purpose, the court finds Defendant has not sufficiently explained what that purpose might have been. Defendant contends that both the Agreement between the parties and the injunctive relief sought by Plaintiff were anti-competitive in nature and therefore evince improper purpose. The court first notes that Defendants signed onto the Agreement and operated under it for two years and cannot be heard to now complain that the Agreement was anti-competitive. Second, to the extent Defendant contends that the scope of

injunctive relief requested by Plaintiff is evidence of improper purpose, the court observes that the function of the entire body of intellectual property law is fundamentally anti-competitive. In that context, it is difficult to draw a reasoned line between robust advocacy on behalf of one's client and overreach. If bad faith occurred whenever a party asked for what a court cannot or will not grant, there would be few precious few examples of good faith civil litigation.

The court notes that subjective bad faith must mean something more than the simple inability to prove the necessary elements of a cause of action; otherwise there would be no second prong to the legal standard employed by California courts. The court has reviewed Defendant's arguments with regard to the element of subjective bad faith and finds that there are no facts alleged that strongly suggest, much less prove, bad faith. The court finds that even if Defendant had proved that Plaintiff's motion for preliminary injunction was objectively specious, there is no question that Defendant has failed to prove that the action was taken in subjective bad faith.

There is no question that TriZetto is the prevailing party in this action. However, the court finds that TriZetto has failed to establish an entitlement under California Civil Code § 3426.4 to attorneys' fees.

THEREFORE, for the reasons discussed above, Defendant's Motion for Award of Attorneys' Fees is hereby DENIED.

IT IS SO ORDERED.

Dated:   June 19, 2012                               _____
                                                     CHIEF UNITED STATES DISTRICT JUDGE

7